IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **INDUSTRIAL BANK, N.A.** | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. _____ |
| **SMALL BUSINESS ADMINISTRATION** | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION

Plaintiff Industrial Bank, N.A. (the "Bank"), by its undersigned counsel, files this Motion for Temporary Restraining Order and Preliminary and Permanent Injunction to seek a temporary restraining order which prohibits the Small Business Administration (the "SBA") from making additional payments to any persons other than the Bank in breach of its Settlement Agreement with NEXGEN Solutions, Inc. ("Nexgen"). The reasons supporting this motion are more fully set forth in the attached memorandum of law in support of the motion, supporting affidavit, and verified complaint, which are filed contemporaneously herewith and incorporated herein by reference.

Respectfully submitted,

Dated: 8/14/06

/s/
Alan M. Grochal, D.C. Bar No. 315218
Toyja E. Kelley, D.C. Bar No. 482977
**TYDINGS & ROSENBERG LLP**
100 East Pratt Street
26th Floor
Baltimore, Maryland 21202
(410) 752-9700

**Attorneys for Plaintiff**
**Industrial Bank, N.A.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of August, 2006, a copy of the foregoing Motion for Temporary Restraining Order and Preliminary and Permanent Injunction, and Memorandum in Support of Motion for Temporary Restraining Order and Preliminary and Permanent Injunction, proposed Order, and Request for Hearing was hand delivered to:

Kenneth L. Wainstein, Esq.
United States Attorney for the
District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530

A copy was also sent via facsimile to:

David A. Fishman, Esq.
Office of General Counsel
U.S. Small Business Administration
409 3rd Street, S.W., Suite 7200
Washington, DC 20416
Fax: (202) 481-0997

Toyja E. Kelley

#522038v.1                              14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INDUSTRIAL BANK, N.A. | * | |
|     Plaintiff | * | |
| v. | * | Civil Action No. _____ |
| SMALL BUSINESS ADMINISTRATION | * | |
|     Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## REQUEST FOR HEARING

Plaintiff Industrial Bank, N.A., by its undersigned attorneys, requests a hearing on its Motion for Temporary Restraining Order and Preliminary and Permanent Injunction.

/s/
Alan M. Grochal, D.C. Bar No. 315218
Toyja E. Kelley, D.C. Bar No. 482977
**TYDINGS & ROSENBERG LLP**
100 East Pratt Street
26th Floor
Baltimore, Maryland  21202
(410) 752-9700

**Attorneys for Plaintiff
Industrial Bank, N.A.**

#522038v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INDUSTRIAL BANK, N.A. | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. _____ |
| SMALL BUSINESS ADMINISTRATION | * | |
| Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION

Industrial Bank, N.A. (the "Bank"), by its undersigned counsel, files this Memorandum in Support of Motion for Temporary Restraining Order and Preliminary and Permanent Injunction and in support, states as follows:

### Introduction

Unless the Small Business Administration's (the "SBA") action is enjoined, the Bank will suffer immediate and irreparable harm. As a result, a temporary restraining order and/or preliminary injunction should be issued to prohibit the SBA from (i) conducting an additional round of direct notification to potential small business claimants, and (ii) making any additional payments to any persons other than the Bank in breach of the terms of its Settlement Agreement with NEXGEN Solutions, Inc. ("Nexgen").

### Factual Background

On or about September 9, 1996, the Bank extended to Nexgen a United States Small Business Administration loan in the total principal amount of $125,000. Howlette personally

#522038v.1                                    2

guaranteed Nexgen's loan from the Bank. Pursuant to the terms of the Note, Nexgen and Howlette were required to repay the Note indebtedness plus accrued interest by paying to the Bank monthly installments of $2,107.58 commencing October 9, 1996 and continuing thereafter through and including September 9, 2003. The Note indebtedness was secured by a blanket lien on all of Nexgen's assets including, but not limited to, accounts receivable and contract rights, chattel paper, general intangibles and instruments, inventory, equipment and proceeds thereof that Nexgen then owned or thereafter acquired (the "First Note Collateral").

Nexgen and Howlette later borrowed an additional $250,000 from the Bank as evidenced by a Promissory Note dated May 31, 1997 (the "Second Note"). The Second Note indebtedness was secured by a blanket lien on all of Nexgen's assets including, but not limited to, accounts receivable and contract rights, chattel paper, general intangibles and instruments, inventory, equipment and proceeds thereof that Nexgen then owned or thereafter acquired (the "Second Note Collateral"), as evidenced by a Commercial Security Agreement dated May 31, 1997 ( the "Second Security Agreement"). (The First Note Collateral and Second Note Collateral are hereinafter referred to as the "Collateral"). The Bank perfected its interest in the Collateral by filing a UCC-1 financing statement with the Maryland State Department of Assessments and Taxation on July 16, 1997 and with the District of Columbia Recorder of Deeds.

The Bank agreed to advance additional funds to Nexgen and Howlette under a line of credit arrangement with the sum of such additional funds and the balance of the Second Note indebtedness collectively capped at $330,000. Nexgen and Howlette later defaulted under both the Note and Second Note. It defaulted under the Note by failing to pay the January and February, 1999 installments of $2,107.58 each. It defaulted under the Second Note by failing to pay the $264,950.67 balance owed when the Second Note matured on October 30, 1998.

On or about September 1, 2000, the Bank filed a Complaint for Confession of Judgment, Breach of Contract, and Preliminary and Permanent Injunction in the Circuit Court for Montgomery County. On September 1, 2000, the Clerk for the Circuit Court for Montgomery entered an Amended Notice of Judgment granting the Bank a judgment by confession against Nexgen (the "Nexgen Judgment").

On or about September 20, 2000, the Bank and Nexgen entered into an interim forbearance agreement, (the "First Forbearance Agreement"), in which Nexgen and Howlette agreed, among other things, to make an immediate payment of $28,000.00 to the Bank and to pay the full amount owed under the Note and the Nexgen Judgment, including interest, late charges, applicable fees, costs, and attorney's fees, on or before January 1, 2001. Nexgen was unable to pay the Bank in full by January 1, 2001. The Bank and Nexgen, therefore, agreed on April 10, 2001, to modify and extend the First Forbearance Agreement thereby extending the time for payment in full to September 1, 2001 (the "Second Forbearance Agreement").

On or before August 14, 2001, Howlette informed the Bank that Nexgen would not be in a position to pay the balance in full by September 1, 2001, but suggested that Nexgen's debt would be paid on an indefinite timetable through proceeds from an agreement between Nexgen and the Small Business Administration. On the basis of Howlette's representation that Nexgen's relationship with the SBA would result in proceeds sufficient to pay the Bank in full, the Bank agreed to modify and extend the existing forbearance agreements with Nexgen on or about March 4, 2003 (the "Third Forbearance Agreement").

On or before December 2003, the Bank learned that SBA had terminated its contract with Nexgen for convenience. Nexgen, however, took the position that the termination was wrongful and initiated litigation to contest the termination. On December 11, 2003, the Bank, as a secured

and judgment creditor, put Nexgen and Howlette on notice of its lien against all of Nexgen's assets and requested that Nexgen and Howlette provide it with all information and documents relevant to its claims against the SBA. A copy of the letter from Robert A. Gordon, Esq. to Glenn K. Garnes, Esq., dated December 11, 2003 is attached hereto as Exhibit 1.

On or about November 15, 2004, Nexgen and the SBA executed the Settlement Agreement in which the SBA agreed to pay $2,900,00.00 to Nexgen immediately, with $600,000.00 "carved out" by the SBA. The carve out was made to reimburse small businesses with legitimate claims as a result of their involvement in Nexgen's small business exchange program with the SBA. Any remaining balance from the $600,000.00 was to be remitted to Nexgen. A copy of the Settlement Agreement is attached hereto as Exhibit 2.

Notwithstanding its entry into the Settlement Agreement and receipt of substantial proceeds from the SBA, Howlette did not inform the Bank of the settlement, despite the requirement that he and Nexgen do so pursuant to the terms of their forbearance agreements. In fact, the Bank did not become aware of the Settlement Agreement until it received notice of it from an anonymous source. A copy of the letter from Robert A. Gordon, Esq. to Glenn K. Garnes, Esq., dated January 19, 2005, regarding this turn of events is attached hereto as Exhibit 3.

When confronted by the Bank on or about February 7, 2005, Nexgen informed the Bank that the SBA had retained "well over $300,000.00" that would be paid to it "within the next 60 days." A copy of the letter from Richard G. Solomon, Esq. to Robert A. Gordon, Esq. is attached hereto as Exhibit 4. Nexgen and Howlette further proposed that Nexgen would assign to the Bank its interest in the remaining settlement proceeds from the SBA.

On or about February 28, 2005, Nexgen and the Bank entered into a revised forbearance

agreement in which Nexgen, among other things, agreed to execute an assignment of its interest in the full amount of the SBA proceeds. The agreement also provided that Nexgen would receive any portion of the settlement remaining after its indebtedness (including all interest and attorney's fees) to the Bank was satisfied in full.

On or about May 15, 2005, Nexgen assigned its interest in the Settlement Agreement to the Bank (the "Assignment"). A copy of the Assignment is attached hereto as Exhibit 5. Nexgen and the Bank also executed a Notice of Assignment, which was sent to the SBA along with a copy of the Assignment document. A copy of the Notice of Assignment is attached hereto as Exhibit 6. On or about July 13, 2005, the Bank sent a copy of the Assignment and Notice of Assignment to the SBA and requested a date upon which the SBA anticipated making the final settlement payment disbursement. A copy of the letter to the SBA from Robert A. Gordon, Esq. is attached hereto as Exhibit 7.

In late 2005, the SBA informed the Bank that, although all payments owed to the small business claimants pursuant to the Settlement Agreement had been made, the Bank would not be paid before the close of 2005. During these discussions, the SBA never informed the Bank that full payment to the Bank might be in jeopardy as a result of additional settlement payments to small business claimants.

In or about January 2006, the SBA notified the Bank that it intended to conduct another round of direct notification to potential small business claimants. The Bank informed the SBA that it did not consent to payments to any additional small business claimants and the remaining settlement proceeds were effectively its payments.

As a result of not having received any payments from the SBA and upon being notified that the SBA intended to conduct another round of direct notification to potential claimants, the

Bank sent a letter to the SBA on January 18, 2006, in which it reiterated its rights to receive the final settlement proceeds, notified the SBA of the balance owed by Nexgen, withheld consent to payments to additional claimants that would cause insufficient funds remaining to pay the Bank in full, and gave the SBA an additional ninety days to complete the settlement distribution process. A copy of the letter to the SBA from Robert A. Gordon, Esq., dated January 18, 2006, is attached hereto as Exhibit 8. The Bank also demanded an immediate partial payment of $50,000.00 as a show of good faith. Ex. 8 at 2.

The SBA made a payment to the Bank on or about March 24, 2006, in the amount of $50,000.00. Despite repeated demands, the SBA has failed and refused to make any additional payments to the Bank pursuant to the terms of the Settlement Agreement. It may also have breached the Settlement Agreement by making improper payments to additional small business claimants. There is no basis whatsoever for the SBA's refusal to distribute the balance of the proceeds now due and payable to the Bank.

### Legal Standard

In determining whether to grant a preliminary injunction, this Court is required to consider four factors:

(1) whether there is a substantial likelihood that plaintiffs will prevail on the merits;

(2) whether plaintiffs will be irreparably injured if the injunction does not issue;

(3) the hardship to defendants if the injunction is granted is balanced against the hardship to plaintiffs if the injunction is not granted; and

(4) whether the public interest favors granting the preliminary relief requested.

*Brown v. Artery Organization, Inc.*, 654 F. Supp. 1106, 1114 (D.D.C. 1987) (citing *Virginia Petroleum Jobbers Ass'n. v. Fed. Power Comm'n.*, 259 F.2d 921, 925 (D.C. Cir. 1958).

The decision whether to grant or deny a motion for temporary restraining order or preliminary injunction is committed to the sound discretion of the trial judge. *First-Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481, 483 (4th Cir. 1970). A plaintiff has the burden of showing an entitlement to such an injunction. *Telvest, Inc. v. Bradshaw*, 618 F.2d 1029, 1036 (4th Cir. 1980). Applying the preliminary injunction test here shows that the Bank has met its burden, and this Court should issue a temporary restraining order, and, following an appropriate hearing, a preliminary injunction, preventing the SBA from conducting an additional round of direct notification to potential small business claimants, and making any additional payments to any persons other than the Bank until a trial of this action on the merits.

## ARGUMENT

I. **THE BANK WILL BE IRREPARABLY HARMED IF A TEMPORARY RESTRAINING ORDER DOES NOT ISSUE**

It is undisputed that the funds available to the SBA to meet its obligations pursuant to the Settlement Agreement are not unlimited. Indeed, the Settlement Agreement originally called for the SBA to set aside $600,000.00 to pay small business claimants, but now less than half of that amount remains available to satisfy the Bank's interests. A temporary restraining order is necessary to prevent the SBA from wrongfully transferring any additional settlement proceeds in breach of the Settlement Agreement until such time as the court is able to determine the merits of this action, thereby preserving for the Bank the only remedy available to protect its interests. Given the limited funds, it is clear the Bank will experience irreparable harm if his motion for a temporary restraining order is not granted.

II. **THERE IS NO LIKELIHOOD OF HARM TO THE SBA IF A TEMPORARY RESTRAINING ORDER ISSUES**

The next step in the preliminary injunction test is to weigh the likelihood of harm to the

defendant if the injunction issues. *Brown*, 654 F. Supp. at 1114. The harm, if any, to the SBA is *de minimis*. The Bank is only asking the Court to maintain the status quo until the issues involving the Settlement Agreement proceeds are resolved. A preliminary injunction should be granted if the "plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991).

Here, the temporary and preliminary injunctions are no broader than absolutely necessary to prevent the plaintiffs' interests from being irreparably prejudiced, and will have little impact on the SBA's interests. The request for injunctions only relate to the funds held back in the Settlement Agreement. Where the balance of hardships weighs so heavily in favor of the plaintiff, the injunction should issue. *Wash. Metro. Area Trans. Comm'n. v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977).

III.    THE BANK WILL LIKELY SUCCEED ON THE MERITS OF THIS ACTION

The Bank's prospects for success in this action are very strong. The Settlement Agreement executed by the SBA and Nexgen clearly and unambiguously provides that any part of the $600,000 settlement fund not distributed during the claims period was to be paid to Nexgen. Nexgen properly assigned its interest in these proceeds to the Bank. The SBA has notified potential small business claimants and paid approximately half of the settlement proceeds to various small business claimants. In late 2005, the SBA informed the Bank that the only act remaining to be performed by the SBA was the remittance of the remaining balance. Upon information and belief, the SBA may now be conducting an additional round of notification to small business claimants and full payment to the Bank might be in jeopardy as a result of additional settlement payments to additional claimants. This is a breach of the

Settlement Agreement and there is no defense to the SBA's breach. Accordingly, the Bank's likelihood of success on the merits is very high.

III.     THE PUBLIC INTEREST WEIGHS IN FAVOR OF ISSUING AN INJUNCTION

Issuing the temporary restraining order serves the public interest in that it reinforces the overarching principles that contracts are enforceable and that parties can look to courts for certainty when resolving contract disputes.

## CONCLUSION

The Bank has sufficiently established each of the required elements for the issuance of a temporary restraining order. For those reasons, this Court should grant the Motion for Temporary Restraining Order and Preliminary and Permanent Injunction and enter an Order which prohibits the SBA from (i) conducting an additional round of direct notification to potential small business claimants, and (ii) making additional payments to any persons other than the Bank in breach of its Settlement Agreement with Nexgen.

_____
Alan M. Grochal, D.C. Bar No. 315218
Toyja E. Kelley, D.C. Bar No. 482977
**TYDINGS & ROSENBERG LLP**
100 East Pratt Street
26th Floor
Baltimore, Maryland 21202
(410) 752-9700

**Attorneys for Plaintiff
Industrial Bank, N.A.**