IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **INDUSTRIAL BANK, N.A.** | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. _____ |
| **SMALL BUSINESS ADMINISTRATION** | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## AFFIDAVIT IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION

I, John N. Gamble, being over the age of 21 years, am competent to testify to the matters herein, and hereby certify as follows:

1. I am a Vice President for Industrial Bank, N.A. (the "Bank").

2. On or about September 9, 1996, the Bank extended to NEXGEN Solutions, Inc. ("Nexgen") a United States Small Business Administration loan in the total principal amount of $125,000. Edward L. Howlette, Jr. ("Howlette"), President of Nexgen, personally guaranteed Nexgen's loan from the Bank.

3. Pursuant to the terms of the Note, Nexgen and Howlette were required to repay the Note indebtedness plus accrued interest by paying to the Bank monthly installments of $2,107.58 commencing October 9, 1996 and continuing thereafter through and including September 9, 2003.

4. The Note indebtedness was secured by a blanket lien on all of Nexgen's assets including, but not limited to, accounts receivable and contract rights, chattel paper, general intangibles and instruments, inventory, equipment and proceeds thereof that Nexgen then owned

#522038v.1

or thereafter acquired (the "First Note Collateral").

5. Nexgen and Howlette later borrowed an additional $250,000 from the Bank as evidenced by a Promissory Note dated May 31, 1997 (the "Second Note").

6. The Second Note indebtedness was secured by a blanket lien on all of Nexgen's assets including, but not limited to, accounts receivable and contract rights, chattel paper, general intangibles and instruments, inventory, equipment and proceeds thereof that Nexgen then owned or thereafter acquired (the "Second Note Collateral"), as evidenced by a Commercial Security Agreement dated May 31, 1997 ( the "Second Security Agreement").  (The First Note Collateral and Second Note Collateral are hereinafter referred to as the "Collateral").

7. The Bank perfected its interest in the Collateral by filing a UCC-1 financing statement with the Maryland State Department of Assessments and Taxation on July 16, 1997 and with the District of Columbia Recorder of Deeds.

8. The Bank agreed to advance additional funds to Nexgen and Howlette under a line of credit arrangement with the sum of such additional funds and the balance of the Second Note indebtedness collectively capped at $330,000.

9. Nexgen and Howlette later defaulted under both the Note and Second Note. It defaulted under the Note by failing to pay the January and February, 1999 installments of $2,107.58 each. It defaulted under the Second Note by failing to pay the $264,950.67 balance owed when the Second Note matured on October 30, 1998.

10. On or about September 1, 2000, the Bank filed a Complaint for Confession of Judgment, Breach of Contract, and Preliminary and Permanent Injunction in the Circuit Court for Montgomery County.  On September 1, 2000, the Clerk for the Circuit Court for Montgomery entered an Amended Notice of Judgment granting the Bank a judgment by confession against

Nexgen (the "Nexgen Judgment").

11. On or about September 20, 2000, the Bank and Nexgen entered into an interim forbearance agreement, (the "First Forbearance Agreement"), in which Nexgen and Howlette agreed, among other things, to make an immediate payment of $28,000.00 to the Bank and to pay the full amount owed under the Note and the Nexgen Judgment, including interest, late charges, applicable fees, costs, and attorney's fees, on or before January 1, 2001.

12. Nexgen was unable to pay the Bank in full by January 1, 2001. The Bank and Nexgen, therefore, agreed on April 10, 2001, to modify and extend the First Forbearance Agreement thereby extending the time for payment in full to September 1, 2001 (the "Second Forbearance Agreement").

14. On or before August 14, 2001, Howlette informed the Bank that Nexgen would not be in a position to pay the balance in full by September 1, 2001, but suggested that Nexgen's debt would be paid on an indefinite timetable through proceeds from an agreement between Nexgen and the Small Business Administration.

15. On the basis of Howlette's representation that Nexgen's relationship with the SBA would result in proceeds sufficient to pay the Bank in full, the Bank agreed to modify and extend the existing forbearance agreements with Nexgen on or about March 4, 2003 (the "Third Forbearance Agreement").

16. On or before December 2003, the Bank learned that SBA had terminated its contract with Nexgen for convenience. Nexgen, however, took the position that the termination was wrongful and initiated litigation to contest the termination. On December 11, 2003, the Bank, as a secured and judgment creditor, put Nexgen and Howlette on notice of its lien against all of Nexgen's assets and requested that Nexgen and Howlette provide it with all information

and documents relevant to its claims against the SBA. A true and accurate copy of the letter from Robert A. Gordon, Esq. to Glenn K. Garnes, Esq., dated December 11, 2003 is attached to the Motion for Temporary Restraining Order and Preliminary and Permanent Injunction ("Motion") for as Exhibit 1.

17. On or about November 15, 2004, Nexgen and the SBA executed the Settlement Agreement in which the SBA agreed to pay $2,900,00.00 to Nexgen immediately, with $600,000.00 "carved out" by the SBA. The carve out was made to reimburse small businesses with legitimate claims as a result of their involvement in Nexgen's small business exchange program with the SBA. Any remaining balance from the $600,000.00 was to be remitted to Nexgen. A true and accurate copy of the Settlement Agreement is attached to the Motion as Exhibit 2.

18. Notwithstanding its entry into the Settlement Agreement and receipt of substantial proceeds from the SBA, Howlette did not inform the Bank of the settlement, despite the requirement that Nexgen do so pursuant to the terms of its forbearance agreements. In fact, the Bank did not become aware of the Settlement Agreement until it received notice of it from an anonymous source. A true and accurate copy of the letter from Robert A. Gordon, Esq. to Glenn K. Garnes, Esq., dated January 19, 2005, regarding this turn of events is attached to the Motion as Exhibit 3.

19. When confronted by the Bank on or about February 7, 2005, Nexgen informed the Bank that the SBA had retained "well over $300,000.00" that would be paid to it "within the next 60 days." A true and accurate copy of the letter from Richard G. Solomon, Esq. to Robert A. Gordon, Esq. is attached to the Motion as Exhibit 4. Nexgen further proposed that it would assign to the Bank its interest in the remaining settlement proceeds from the SBA.

20. On or about February 28, 2005, Nexgen and the Bank entered into a revised forbearance agreement in which Nexgen, among other things, agreed to execute an assignment of its interest in the full amount of the SBA proceeds. The agreement also provided that Nexgen would receive any portion of the settlement remaining after its indebtedness (including all interest and attorney's fees) to the Bank was satisfied in full.

21. On or about May 15, 2005, Nexgen assigned its interest in the Settlement Agreement to the Bank (the "Assignment"). A true and accurate copy of the Assignment is attached to the Motion as Exhibit 5. Nexgen and the Bank also executed a Notice of Assignment, which was sent to the SBA along with a copy of the Assignment document. A true and accurate copy of the Notice of Assignment is attached to the Motion as Exhibit 6. On or about July 13, 2005, the Bank sent a copy of the Assignment and Notice of Assignment to the SBA and requested a date upon which the SBA anticipated making the final settlement payment disbursement. A true and accurate copy of the letter to the SBA from Robert A. Gordon, Esq. is attached to the Motion as Exhibit 7.

22. In late 2005, the SBA informed the Bank that, although all payments owed to the small business claimants pursuant to the Settlement Agreement had been made, the Bank would not be paid before the close of 2005. During these discussions, the SBA never informed the Bank that full payment to the Bank might be in jeopardy as a result of additional settlement payments to small business claimants.

23. In or about January 2006, the SBA notified the Bank that it intended to conduct another round of direct notification to potential small business claimants. The Bank informed the SBA that it did not consent to payments to any additional small business claimants and the remaining settlement proceeds were effectively its payments.

24.  As a result of not having received any payments from the SBA and upon being notified that the SBA intended to conduct another round of direct notification to potential claimants, the Bank sent a letter to the SBA on January 18, 2006, in which it reiterated its rights to receive the final settlement proceeds, notified the SBA of the balance owed by Nexgen, withheld consent to payments to additional claimants that would cause insufficient funds remaining to pay the Bank in full, and gave the SBA an additional ninety days to complete the settlement distribution process. A true and accurate copy of the letter to the SBA from Robert A. Gordon, Esq., dated January 18, 2006, is attached to the Motion as Exhibit 8. The Bank also demanded an immediate partial payment of $50,000.00 as a show of good faith. See Motion Ex. 8 at 2.

25.  The SBA made a payment to the Bank on or about March 24, 2006, in the amount of $50,000.00.

26.  Despite repeated demands, the SBA has failed and refused to make any additional payments to the Bank pursuant to the terms of the Settlement Agreement. It may also have breached the Settlement Agreement by making improper payments to additional small business claimants. There is no basis whatsoever for the SBA's refusal to distribute the balance of the proceeds now due and payable to the Bank.

I solemnly affirm under the penalties of perjury that the contents of the foregoing are true to the best of my knowledge, information and belief.

Date: 7/25/06

John N. Gamble, Vice President
Industrial Bank, N.A.

STATE OF District of Columbia :
                                                                      To Wit:
CITY/COUNTY OF Washington :

    I HEREBY CERTIFY that on this 25th day of July, 2000, before me, the undersigned, a Notary Public of said State, personally appeared John N. Gamble, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and John N. Gamble acknowledged that he executed the same for the purposes contained therein and that it is his act and deed.

    WITNESS my hand and Notarial Seal.

                                                            _____
                                                              Notary Public

My commission expires: _____
                              Roydell Stephens
                              Notary Public, District of Columbia
                              My Commission Expires 04-14-2007